UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KAMERON BERNARD KELSEY,

        Plaintiff,

v.                             CASE NO. 3:18-cv-1009-J-32MCR

UNITED STATES,

        Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's Application to Proceed in

District Court Without Prepaying Fees or Costs (Long Form) ("Application") (Doc.

6).  For the reasons stated herein, it is respectfully **RECOMMENDED** that the

Application be **DENIED** and the case be **DISMISSED without prejudice** to

Plaintiff filing a paid complaint.

On August 20, 2018, Plaintiff, a resident of Jacksonville, Florida, filed a

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed.R.Civ.P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

Complaint for a Civil Case ("Complaint"), against six individual Defendants,[2] invoking federal question jurisdiction for his unspecified claim(s).  (Doc. 1.)  Under "Statement of Claim," Plaintiff simply stated: "See Section XV in Complaint - Factual Background (Paragraphs 42-498)" (*id.* at 5), but there was no such section in the Complaint.  Under "Relief," Plaintiff listed Sections X, XVIII, and XIX (*id.*), but no such sections existed in the Complaint.[3]

Noting these obvious omissions, the undersigned entered an Order on September 19, 2018, stating that the Court could only speculate what type of claim Plaintiff attempted to bring and what type of relief he sought.  (Doc. 4 at 3.)  The undersigned also stated that the Complaint, in its original form, did not include any allegations to enable the Court to determine whether the Complaint stated a claim on which relief could be granted, whether the Complaint was frivolous or malicious, and whether it sought monetary relief against a defendant who was immune from such relief.  (*Id.*)  The undersigned added:

> If Plaintiff determines he wishes to proceed with this action, he must
> file an amended complaint clarifying his allegations.  The amended

---

[2] The named Defendants included: Theodore Jackson, Special Agent in Charge ("SAC Jackson"); Howard Hatfield, Assistant Special Agent in Charge ("ASAC Hatfield"); Daniel J. Rolince, Special Agent ("SA Rolince"); Charles Jones, Special Agent ("SA Jones"); Jalaine Ward, Special Agent ("SA Ward"); and Cynthia Allard, Special Agent ("SA Allard").  (*See* Doc. 1.)  These Defendants were alleged to reside in either Atlanta or Macon, Georgia.  (*Id.*)  In the caption of the Complaint, Plaintiff also named the United States as a party Defendant.  (*Id.*)

[3] In addition, although Plaintiff's original application referenced "Attached Exhibits 1-9," "Attached Exhibits 2-5," and "Attached Exhibits 10-12," no exhibits were attached thereto.  (Doc. 2 at 1-2.)

> complaint shall contain "a short and plain statement of the claim
> showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).
> "Each allegation must be simple, concise, and direct," Fed.R.Civ.P.
> 8(d)(1), and every essential element of each claim Plaintiff asserts
> must be directly or indirectly pleaded to show the Court that Plaintiff
> is entitled to "a recovery under some viable legal theory," *Roe v.
> Aware Woman Ctr.*, 253 F.3d 678, 683 (11th Cir. 2001). Each claim
> "must include a concise statement identifying the remedies and the
> parties against whom relief is sought." *Cohen v. Office Depot, Inc.*,
> 184 F.3d 1292, 1297 (11th Cir. 1999) (internal quotation and citation
> omitted). Further, each claim should be in numbered paragraphs,
> each limited as far as practicable to a single set of circumstances.
> Fed.R.Civ.P. 10(b).

(*Id.* at 3-4.) Plaintiff was directed to file his amended complaint and amended,

notarized application no later than October 11, 2018.[4] (*Id.*)

On October 9, 2018, Plaintiff filed the instant long-form, notarized

Application[5] and a 512-page Amended Complaint. (Docs. 6, 7.) Even a cursory

look at the Amended Complaint indicates that it fails to comply with the pleading

requirements found in Rules 8 and 10, Fed.R.Civ.P., and that it is frivolous. Rule

8 provides that "[a] pleading that states a claim for relief must contain . . . a short

and plain statement of the claim showing that the pleader is entitled to relief," and

that "[e]ach allegation must be simple, concise, and direct." Fed.R.Civ.P. 8(a)(2),

(d)(1). Rule 10 requires that each claim be presented "in numbered paragraphs,

each limited as far as practicable to a single set of circumstances," and that "each

claim founded on a separate transaction or occurrence . . . must be stated in a

---

[4] Plaintiff's original application was deficient because it was not notarized.

[5] The Application indicates that Plaintiff is indigent.

3

separate count."  Fed.R.Civ.P. 10(b); *see also Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (stating that multiple claims should be presented "with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading").  Despite the liberal pleading requirement in Rule 8(a), Fed.R.Civ.P., "a complaint must still contain either direct or inferential allegations respecting all material elements of a cause of action."  *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006) (emphasis omitted).  In a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations "lumping" multiple defendants together are insufficient to permit the defendants, or the Court, to ascertain exactly what plaintiff is claiming. *See West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citing *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) and *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997)).  Rules 8 and 10 work together "to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (citation and

4

quotation marks omitted).

Even when construed liberally,[6] the Amended Complaint does not meet these requirements.  The full title of the Amended Complaint reads as follows:

Amended Complaint

"Classified"
Psychotronic Technology
Weapons of Mass Destruction
New Evidence Discovered

Amended Complaint for the Recovery of Damages
Caused by Assault – "Secret" Pyschotronic [sic] Technology
Weapons of Electromagnetic Torture & Murder
(Military Intelligence) Toward "Remote Mind Control"
Non-Consensual Guinea Pig Experiment, False
Arrest/False Imprisonment, Negligence, Gross Negligence,
& Intentional Infliction of Emotional Distress Under
The Federal Tort Claims Act "Law Enforcement Proviso"

(Doc. 7 at 1.)  Then, over the next 75 pages, without utilizing "numbered paragraphs, each limited as far as practicable to a single set of circumstances," Fed.R.Civ.P. 10(b), Plaintiff proceeds to provide an "Introduction [to the] Justice System."  (*Id.* at 2-76.)  In a narrative form, he lays out the history of the Federal Bureau of Investigations ("FBI") under several administrations, touching upon alleged abuses in the system, several scandals, and a number of conspiracies. (*Id.*)

---

[6] The pleadings of *pro se* litigants, like Plaintiff, must be construed liberally and "are held to less stringent standards than formal pleadings drafted by lawyers."  *Hughes v. Rowe*, 448 U.S. 5, 9 (1980) (per curiam).  However, *pro se* litigants are still required to "conform to procedural rules."  *Riley v. Fairbanks Capital Corp.*, 222 F. App'x 897, 898 (11th Cir. 2007).

In the second section of the Amended Complaint, titled "Analysis," Plaintiff proceeds to explain in great detail how the "FBI violated the Rule of law and the most sacred principles in the American criminal justice system."  (*Id.* at 76-77.) Again, without utilizing "numbered paragraphs, each limited as far as practicable to a single set of circumstances," Plaintiff begins by citing to various statutory provisions and case law, then proceeds to explain the criminal justice process in the State of Georgia, and provides what appear to be excepts of motions and pleadings filed in the criminal case initiated against him in the State of Georgia for an armed bank robbery.  (*Id.* at 77-119.)  Also included in the Analysis section are frequently asked questions with corresponding answers pertaining to the FBI.  (*Id.* at 93-115.)  The "allegations" in both the Introduction and the Analysis sections seem to be redundant, immaterial, and/or impertinent to any of Plaintiff's claims.

In the third section titled "Parties," which starts on page 119 of the Amended Complaint, Plaintiff introduces the parties to this action.  (*Id.* at 119-130.)  Plaintiff is alleged to be a "former resident of Bibb County, Macon, Georgia, and Rockdale County, Conyers, Georgia," and a current "resident of Jacksonville, Duval County, in the [S]tate of Florida."  (*Id.* at 119.)  Plaintiff describes himself as "a 42 year old African-American outside the box 'free-thinker' who challenges and conquers any evil and injustice set in motion against him and his mother."  (*Id.*) Plaintiff allegedly "has 3 years of college in criminal justice with a 3.0 career G.P.A., who's [sic] Pell grant award and school finances has [sic] been sabotaged

by defendant United State's [sic] department of education."  (*Id.*)

Plaintiff refers to Defendant, United States of America, interchangeably as the FBI, the Department of Defense ("DOD"), the U.S. Army, the U.S. Air Force, the Central Intelligence Agency ("CIA"), the National Security Agency ("NSA"), and the DOD's Air Force Research Laboratory ("AFRL").  (*Id.* at 120-24.) Defendant's involvement is described, in part, as follows:

> 6.    At all material times to this action, defendant United State's [sic] agency [FBI] contracted with private investor Patricia Harden . . . , for the purposes of gaining access to plaintiff [sic] mother's house prior to closing to install microwave spy-link in the walls and microwave powered wall bug sensor towards the "Remote Mind Control" experiment (plaintiff's mother "Sherry Roberts").
>
> 7.    At all material times to this action, defendant United State's [sic] agency [FBI] contracted with AT & T and other various disguised communication vehicles including, but not limited to FED Ex, UPS, etc., transporting psychotronic weapons to neighbors and installing them underground in neighbors [sic] yards toward the "Remote Mind Control" experiment (Sherry Roberts).
>
> 8.    At all material times to this action, defendant United State's [sic] [DOD,] U.S. Army[,] U.S. Air Force Military intelligence and "Black Helicopter" constantly carries [sic] and discharges [sic] psychotronic weapons toward the "Remote Mind Control" experiment (Sherry Roberts).
>
> . . .
>
> 30.   At all material times to this action, Defendant United State's [sic] agency [FBI] collaborated with the [CIA] to infiltrate Willis-Knight Hospital in Shreveport, Louisiana, to implant biochip in plaintiff's mother for the purposes of Remote Neural Monitoring (RNM) and EMF Brain Stimulation radiation and genocide experiment . . . .

(*Id.* at 119-20, 126.)

Plaintiff further alleges that the FBI collaborated with the Georgia Bureau of Investigation ("GBI") "to impose organized gang stalking and gang stalking groups against [P]laintiff and [his] mother in the [S]tate of Georgia, [S]tate of Maryland, and ongoing in the [S]tate of Florida." (*Id.* at 125.)  In addition, the FBI allegedly "recruited Bishop Eddie L. Long (Senior pastor) as a[] privilege informant, at Newbirth Baptist Church in Lithonia, Georgia, for the purposes of monitoring [P]laintiff and electronically harassing [P]laintiff's mother." (*Id.*)  Plaintiff claims that "[a]t all material times to this action, [P]laintiff and his mother are not by any means delusional, mentally ill, irrational, nor paranoid." (*Id.* at 120.)

In section IV, titled "Standing," Plaintiff alleges that he "has standing to bring this action because he has been directly affected and victimized by the negligence, wrongful acts, omissions, and intentional inflictions and certain intentional torts." (*Id.* at 130.)  Although mentioned throughout the Amended Complaint, Plaintiff's mother, Sherry Roberts, is not a named party to this action. (*See generally id.*)

In section V, titled "Jurisdiction and Venue," Plaintiff alleges that this Court has subject matter jurisdiction over this matter: (1) "pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States of America and is premised on the acts and omissions of the Defendant acting under color of federal law"; (2) "pursuant to 28 U.S.C. § 1346(b) in that this is a claim against

8

the Defendant United States of America, for money damages accruing on or after

January 1, 1945, for personal injury caused by the negligent and wrongful acts

and omissions of employees of the Government while []acting within the course

and scope of their office or employment, under the circumstances where the

Defendant United States of America, if a private person, would be liable to the

Plaintiff"; and (3) "pursuant to 18 U.S.C. § 2712 in that any person who is

aggrieved by any willful violation of this chapter or of chapter 119 of this title or of

sections 106(a), 305(a), or 405(a) of the Foreign Intelligence Surveillance Act of

1978 (50 U.S.C. § 1801 et. seq.) may commence an action in United States

[District Court against the United States] to recover money damages."  (Doc. 7 at

130-31.)  Plaintiff also alleges that pursuant to the Federal Tort Claims Act

("FTCA"), 28 U.S.C. § 2671, *et. seq.*:

> [O]n March 21, 2015, . . . [Plaintiff] presented his claim to the
> appropriate federal agency for administrative settlement under the
> FTCA demanding certain sum of $150,000,000.  By letter [of] April 7,
> 2015, Plaintiff's claim was forwarded by the Department of Justice to
> the F.B.I., and was buried by deputy general counsel ordered by FBI
> Deputy Director and FBI Director.  The F.B.I. agency has yet to give
> Plaintiff a decision up to this day (3 years and five months) and the
> Administrative claim is "deemed denied."  Since then new evidence
> has been discovered that was not capable of being discovered
> during Administrative Tort Claim presentation and higher damages
> has [sic] been demanded in this Amended Complaint.  (See Attached
> Exhibits 19-21)

(Doc. 7 at 132; *see also* Docs. 7-1, 7-2, 7-3.)

Plaintiff continues with general allegations as to the United States' limited

9

waiver of sovereign immunity in section VI, concealment in section VII, equitable estoppel in section VIII, continuing tort doctrine in section IX, classified information in section X, declassification in section XI, misuse of the classification system in section XII, and remedies in section XIII.  (*See* Doc. 7 at 133-45.)  In sections XIV and XV, Plaintiff alleges that the animosity of certain individuals towards him have influenced his criminal case.  (*Id.* at 145.)

Over the next 129 pages, in section XVI, Plaintiff presents a long and detailed narrative about his own and other individuals' criminal histories, including Plaintiff's arrest and prosecution for an armed bank robbery in Georgia state court, as well as events that took place after Plaintiff's release from prison.[7]  (*Id.* at 145-274.)  This narrative also seems to include excerpts of various state court documents.  (*See, e.g.*, *Id.* at 187-207, 210-17, 227, 248-61.)

Plaintiff alleges that the FBI's involvement in his Georgia criminal case was revealed to him in 2015.  (*Id.* at 230-34.)  He describes it as follows:

> 524.  On December 15, 2003, [P]laintiff's mother had one of the family members to write up a letter of the injustice prosecution of her son and the case involving a federal bank was distributed to the public media and newspapers exposing corruption.

---

[7] Plaintiff advises that in 2013, he consulted with, *inter alia*, the Law Offices of Gary, Williams, Parenti, Watson & Gary, P.L., in Stuart, Florida, about representation for a civil rights suit against the State of Georgia, and later contacted the Office for Civil Rights in Washington, D.C., about investigating his case for civil rights violations.  (Doc. 7 at 223.)  Plaintiff further advises that in 2014, he filed a § 1983 lawsuit against State detective Nathaniel Jordan and Bibb County Municipality after allegedly discovering new evidence in his criminal case.  (*Id.* at 224.)

525. The FBI behind the scenes started retaliation against [P]laintiff's mother through legal counselors, house foreclosure, and vehicle tracking.

526. At [P]laintiff's 2004 MNT hearing, the FBI behind the scenes forced [P]laintiff's appellant [sic] counsel Leighton Berry to move out of Macon and relocate for exposing State Det. Jordan on the witness stand, who nearly exposed FBI [sic] file and record of activity on the case.

527. In 2005, the FBI behind the scenes paid bribes to [P]laintiff's mother's bankruptcy attorneys' [sic] Robert House and Calvin Jackson to twist paperwork on Chapter 7 filing [sic] for the purpose of illegally foreclosing on house [sic] of 22 years.

528. In January of 2006, the FBI behind the scenes forced [P]laintiff's trial counsel Lesley Beaty out of practicing law and into an unknown location for the purpose of being called to testify on discovery issues.

529. On October 6, 2007, the FBI behind the scenes influenced McCalla Raymer, LLC in Roswell, Georgia, representing Federal Home Loan Mortgage Corporation to do a quick foreclosure and sale of [P]laintiff's mother (Sherry Roberts) [sic] house of 22 years.

. . .

539. December 19, 2007- April 2008, [P]laintiff's mother lived for time [sic] in her car and the FBI behind the scenes started vehicle tracking through people using their blackberry phones and ipods and the FBI was conducting vehicle surveillance of [P]laintiff's mother.

(*Id.* at 271-74.)

In section XIX, titled "Preliminary Statement," Plaintiff continues with his

allegations of "FBI domestic intelligence targeting [P]laintiff's mother in

connection with [P]laintiff's FBI file no. 513230EBO."  (*Id.* at 274.)  He alleges, in

part:

540.  . . . [The] United States of America is transmitting, intercepting, tampering, and blocking the content of a significant portion of the [P]laintiff and his mother's phone calls, emails, instant

messaging, text messaging, electronic and wireless
communications, and other communications domestically,
including [P]laintiff's family in other states and practically every
American[,] including the Trump team before the election[,]
and specifically for the past 14 years of [P]laintiff's mother,
beginning on or about January 2004 in Lake Wildwood in
Macon, Georgia.

541.    Plaintiff's FBI file no. 513230EBO, will show communications
are intercepted, manipulated, tempered with, stored, (data
mining), electronic harassment and electronic surveillance,
and impeded since 2008.

542.    Plaintiff is not delusional and has documents from credible
sources, whistle blowers, and expert investigators.

(*Id.* at 274-75.)

Although Plaintiff's mother is not a party to this action, Plaintiff makes a

number of allegations regarding her, including the following:

•    Plaintiff's mother was gang stalked by the FBI in collaboration with the

Central Command Headquarters in 2008;

•    Plaintiff's mother was forced to move from place to place in 2010-2012 "to

avoid the increased intensity of the electronic harassment that was in full

operation 24 hours a day and 7 days a week";

•    In 2010, she developed a cyst in her gums as a result of the electronic

harassment and high frequency electrical shocks;

•    In 2011, she underwent oral surgery to remove the cyst, but on the morning

of the surgery, the doctor who was scheduled to perform it "was replaced

by six unknown surgeons that [P]laintiff and [P]laintiff's mother believed to

have planted a biochip (which hooks the target to the air waves of the

12

electronic harassment activities, tracks the target, and controls the mind

and body of the target 'Remote Neural Monitoring' (RNM))";

• The implanted biochip "was orchestrated behind the scenes by the FBI and

carried out by the Deep State"; and

• "In 2012, the FBI behind the scenes conspired with the I.R.S. to

intentionally file [P]laintiff's mother under 1040 . . . for the purpose of

financial sabotage."

(*Id.* at 285-87; *see also id.* at 332-33.)  Plaintiff adds that their neighbors were

gang stalking and using Hi-Tech devices on him and his mother in Georgia since

2013.  (*Id.* at 288.)  He alleges that as a result of such interference "at public

libraries, school's learning resource center, and home personal computers," he

has been "unable to create pdf documents . . . and turn in key school

assignments."  (*Id.* at 294.)

In section XX, Plaintiff purports to introduce the "U.S. Intel community -

Shadow Government & Deep State 'Secret' Patterns & Practices."  (*Id.* at 294-

99.)  In section XXI, he gives a background of the intelligence community,

including some allegedly "classified" information regarding "electronic torture,

electromagnetic torture, microwave torture, electronic murder, electromagnetic

murder, cooked alive, electronic mind control, brain zapping, [and] people

zapper."  (*Id.* at 299-304.)  Interestingly, Plaintiff alleges that a victim of such

conduct "[d]oes not know how harassment is happening or by whom," does not

13

know why it is happening, and cannot get away no matter where he goes.  (*Id.* at

304; *but see id.* at 284 (providing ways to block or distort most forms of electronic

harassment), 293-94.)

> Plaintiff further alleges:

> 628.   In 2013-2018 and ongoing, the FBI behind the scenes launched Narus systems with the use of Military intelligence . . . for the purpose of carrying psychotronic weapons . . . toward the "Remote Mind Control" experiment ([P]laintiff's mother).
> 629.   Military helicopters and fighter jets relentless [sic] and continuously[,] 7 days a week and 24 hours a day[,] fly directly over [P]laintiff's and his mother's house carrying psychotronic weapons . . . .
> . . .
> 655.   In 2013- 2017, [P]laintiff and his mother's duplex apartment . . . in Conyers, Georgia was "wiretapped" by the FBI behind the scenes gaining access through property landlord . . . and the ceiling was "bugged" with an installed wall bug sensor functioning like a microphone.
> 656.   Prior to the September 22, 2017, closing of house [sic] . . . in Jacksonville, Florida, the FBI behind the scenes gained access to the house through Patricia Harden (Owner) to install microwave spy-link and microwave powered wall bug sensor.
> 657.   On November 7, 2017, plaintiff found wiretap equipment outside installed in the ground connected to the wall bug sensor.

(*Id.* at 312-13, 346.)

> In Section XXII of the Amended Complaint, titled "Conclusion," Plaintiff

continues to make general conspiracy allegations and provides a list of

"symptoms" suffered by him and his mother.  (*Id.* at 347-411.)  In Section XXIII,

titled "Tort Damages," Plaintiff cites the law regarding damages, and in Section

XXIV, he lists case law awarding damages from other jurisdictions.  (*Id.* at 411-

14.)

Starting on page 414 the Amended Complaint, in section XXV, Plaintiff begins the discussion about his eight causes of action.[8]  (*Id.* at 414.)  The First Cause of Action is for "Violation of Judicial Process of Court Proceedings and Procedural Due Process."  (*Id.*)  Plaintiff claims that he was denied due process by SA Rolince, acting on behalf of the United States, by being held in solitary confinement without a telephone call and without a hearing.  (*Id.*)

The Second Cause of Action is for "Violation of Substantive Due Process." (*Id.* at 415.)  Plaintiff claims that his lengthy solitary confinement, without counsel and without a telephone call, amounted to punishment of a pre-indictment detainee in violation of state and federal laws.  (*Id.* at 415-16.)

The Third Cause of Action is for "Negligence Under [the FTCA]."  (*Id.* at 416.)  Plaintiff claims that SA Rolince, SA Jones, SAC Jackson, and ASAC Hatfield, jointly and individually, acting on behalf of the United States, breached their duty to protect Plaintiff's right to counsel during interrogation and jail booking, and his right to a phone call during solitary confinement; and for such allegedly negligent conduct, Plaintiff seeks money damages.  (*Id.* at 416-17.)

The Fourth Cause of Action is for "False Arrest/False Imprisonment Under [the FTCA] (Law Enforcement Proviso)."  (*Id.* at 417.)  Plaintiff claims that SA

---

[8]  As discussed in more detail later, it is nearly impossible to determine which facts are relevant to a particular cause of action, because the Amended Complaint is a shotgun pleading.

15

Rolince, SA Jones, SAC Jackson, and ASAC Hatfield, jointly and individually, acting on behalf of the United States, willfully and recklessly violated Plaintiff's federal and state rights, because his prolonged detention in solitary confinement was not justified, and, thus, it constituted false imprisonment.[9]  (*Id.* at 418.)

The Fifth Cause of Action is for "Re-False Imprisonment/Misrepresentation/ Deceit/Fraud under the [FTCA] (Law Enforcement Proviso)."  (*Id.*)  Plaintiff claims that SA Rolince, acting on behalf of the United States, *inter alia*, deceived his retained counsel, coerced the State of Georgia to backdate case documents, concealed documents in a secret FBI file to control the outcome of the case, and meddled in the voir dire process, discovery, pretrial motions, and *Brady* materials. (*Id.* at 419-22.)  Plaintiff further claims that SAC Jackson, ASAC Hatfield, SA Rolince, SA Jones, SA Ward, and SA Allard, jointly and individually, acting on behalf of the United States, covered up omissions and wrongful acts by concealing documents indefinitely in a secret FBI file.  (*Id.* at 419.)

The Sixth Cause of Action is for "Invasion of Privacy (Wiretap and Remote Mind Control) Under [the FTCA]."  (*Id.* at 427.)  Plaintiff claims that two addresses—one in Conyers, Georgia and one in Jacksonville, Florida—were wiretapped by the FBI, behind the scenes, by installing microwave spy-link in

---

[9] Plaintiff alleges that all material times, he was held as an unindicted detainee in a state facility in Macon, Georgia.  (Doc. 7 at 121-22.)  However, one of his exhibits shows that he was sentenced on July 11, 2003 and was discharged from the custody of the Georgia Department of Corrections on January 5, 2013.  (Doc. 6-1.)

walls and microwave-powered wall bug sensor towards the "Remote Mind Control" experiment with Plaintiff's mother.  (*Id.*)  Plaintiff alleges that the actions of the United States were willful, wanton, and in gross and reckless disregard of his and his mother's privacy rights in violation of 18 U.S.C. § 1513(b).  (*Id.*)

The Seventh Cause of Action is for "Assault ('Classified' Electromagnetic and Pschotronic [sic] 'Technology' Weapons) & Attempted Murder (Genocide) Under the [FTCA] (Law Enforcement Proviso)."  (*Id.*)  Plaintiff claims that he has been suffering from severe emotional distress as a result of the United States' energy attacks and intentional use of weapons of mass destruction pursuant to 18 U.S.C. § 2332.[10]  (*Id.* at 428.)

The Eighth Cause of Action is for "Gross Negligence under the [FTCA] - Non-Compliance of [sic] the Attorney General's Guideline Regarding the Use of Confidential Informants."  (*Id.*)  Plaintiff claims that SA Rolince, acting on behalf of the United States, "failed to comply with the 2001 Revised Attorney General's Confidential Informant Guidelines by intentionally failing to propose to operate [sic] [d]eactivated [c]onfidential [i]nformant Bernard Taylor," and by failing to do a suitability review of confidential informant Taylor.  (*Id.* at 505-08.)  The Amended Complaint acknowledges that "[n]othing in these Guidelines is intended to create or does create an enforceable legal right or private right of action by a [confidential informant] or any other person."  (*Id.* at 437.)

---

[10] No such section exists.

17

Plaintiff alleges that as a result of the United States' omissions and wrongful acts, he has suffered, *inter alia*, physical harm, pain and suffering, severe psychological and emotional distress, loss of wages, loss of society, including six months of unlawful pre-indictment detention and 114 months of unlawful imprisonment. (*Id.* at 509.) Plaintiff seeks monetary relief in excess of $40,000,000,000 under the FTCA. (*Id.* at 509-10.)

Upon review of the Amended Complaint, the undersigned concludes that it is an impermissible shotgun pleading. "'Shotgun' pleadings are cumbersome, confusing complaints that do not comply with the[] pleading requirements." *Yeyille v. Miami Dade Cnty. Pub. Schs.*, 643 F. App'x 882, 884 (11th Cir. 2016) (per curiam).

> There are four basic types of shotgun pleadings:
> (1) those in which "each count adopts the allegations of all preceding counts;" (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which. "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."

*Id.* (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)).

The Amended Complaint is a quintessential shotgun pleading of the first type identified above. (*See* Doc. 7 at 414-18, 427-28.) A shotgun pleading, like

18

the present one, "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).  Consequently, in ruling on the sufficiency of a claim, the Court is faced with the onerous task of sifting out irrelevancies in order to decide for itself which facts are relevant to a particular cause of action asserted.  *See id.*  This is an impossible task given the length of the pleading in this case – a total of 512 pages.  This task is complicated even further, as the Amended Complaint includes "immaterial facts not obviously connected to any particular cause of action," which also puts it into the second category of shotgun pleadings.  (*See generally* Doc. 7.)[11]

In the Eleventh Circuit, shotgun pleadings are "altogether unacceptable." *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997); *see also Cook v. Randolph Cnty.*, 573 F.3d 1143, 1151 (11th Cir. 2009) ("We have had much to say about shotgun pleadings, none of which is favorable.") (collecting cases).  As

---

[11] The Amended Complaint reads more like an evidentiary narrative than a pleading contemplated by the notice pleading standard.  Since it fails to provide "a short and plain statement" of Plaintiff's claims and contains redundant, immaterial, or impertinent matter, it would be impossible for Defendant to prepare a meaningful response.  Where, as here, "'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief,'" a "dismissal under Rules 8(a)(2) and 10(b) is appropriate."  *Weiland*, 792 F.3d at 1320 (quoting *Anderson*, 77 F.3d at 366) (emphasis omitted).

the court in *Cramer* recognized, "[s]hotgun pleadings, whether filed by plaintiff or defendant, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Cramer*, 117 F.3d at 1263. When faced with the burden of deciphering a shotgun pleading, it is the trial court's obligation to strike the pleading on its own initiative, and force the plaintiff to replead to the extent possible under Rule 11, Fed.R.Civ.P. *See id.* (admonishing district court for not striking shotgun complaint on its own initiative); *see also United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006) ("When faced with a shotgun pleading, the trial court, whether or not requested to do so by a party's adversary, ought to require the party to file a repleader."). For this reason alone, the Amended Complaint is subject to being stricken.

However, because the Amended Complaint also fails to state a claim on which relief may be granted and is frivolous,[12] the undersigned recommends that the Amended Complaint be dismissed without prejudice to filing a paid complaint. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court receiving an application to

---

[12] "A claim is frivolous if and only if it 'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (also stating that the term "frivolous" "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation")). "Arguable means capable of being convincingly argued. An action or claim in which 'the plaintiff's realistic chances of ultimate success are slight' is not one capable of being convincingly argued." *Moreland v. Wharton*, 899 F.2d 1168, 1170 (11th Cir. 1990) (per curiam).

proceed *in forma pauperis* must dismiss the case *sua sponte* if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."); *see also Neitzke*, 490 U.S. at 324 ("Congress recognized . . . that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.  To prevent such abusive or captious litigation, § 1915(d) authorizes federal courts to dismiss a claim filed *in forma pauperis* . . . if satisfied that the action is frivolous or malicious.").

Plaintiff brings this action against the United States.  However, "[i]t is well settled that sovereign immunity bars suit against the United States except to the extent that it consents to be sued" and "statutory waivers of sovereign immunity 'are to be construed strictly in favor of the sovereign.'"  *Means v. United States*, 176 F.3d 1376, 1378 (11th Cir. 1999).

> Congress has authorized a limited waiver of sovereign immunity under the FTCA "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Id.* at 1378-79 (citing 28 U.S.C. § 1346(b)(1)).[13]  "The alleged tortfeasor's status

---

[13] The FTCA "is the exclusive remedy for suits against a federal agency or federal employee acting in his official capacity."  *Albajon v. Gugliotta*, 72 F. Supp. 2d
(continued...)

as an 'employee of the government' is the *sine qua non* of liability under the

FTCA."  *Id.* at 1379.

Here, Plaintiff's claims arise out of his arrest, detention, and prosecution for

an armed bank robbery by the State of Georgia, not by federal authorities.  *See*

28 U.S.C. § 2680(h) (listing exceptions from the United States' waiver of immunity

under the FTCA, and stating that "with regard to acts or omissions of investigative

or law enforcement officers of the United States Government, the provisions of

this chapter and section 1346(b) of this title shall apply to any claim arising, on or

after the date of the enactment of this proviso, out of assault, battery, false

imprisonment, false arrest, abuse of process, or malicious prosecution").

Although Plaintiff makes references to a secret FBI file and behind the scenes

involvement by the United States, the FBI, the DOD, the U.S. Army, the U.S. Air

Force, the CIA, the NSA, and/or the AFRL,[14] his allegations of electronic

harassment and surveillance, use of psychotronic weapons and remote mind

control, retaliation, and interference with messages, telephone calls, etc., are the

sort of "fanciful and delusional claims" that have been found to be "factually

---

[13](...continued)
1362, 1371 (S.D. Fla. 1999).  "[W]hen a federal official is acting within the scope of his
employment, he is immune from suit for common law torts."  *Id.*

[14] Federal agencies are not proper defendants under the FTCA; "under the Act,
the only proper defendant is the United States."  *Albajon*, 72 F. Supp. 2d at 1366 n.7.

22

baseless and legally frivolous" in earlier cases.[15]  *See Ethier v. Dir. of FBI*, Case No. 3:09-cv-1227-J-25MCR (M.D. Fla. Dec. 16, 2009) (finding that plaintiff's "fanciful and delusional claims are factually baseless and legally frivolous," where plaintiff complained of "electronic torture" and harassing communications by the Department of Justice) (report and recommendation adopted Jan. 28, 2010); *Phillips v. United States*, Case No. 3:99-cv-1157-J-20C (M.D. Fla. Dec. 19, 1999) (finding that plaintiff's "fanciful and delusional claims are factually baseless and legally frivolous," where plaintiff sought the court's "intervention to order the removal of a 'Model 84 electromagnetic spectrum device' which he claims defendants are using as part of 'clandestine and covert operations' to monitor plaintiff's actions using the aid of local media personalities, with the malicious intent to entrap and murder him, in violation of his civil rights and a variety of federal statutes, certain Biblical passages, the 'Magna Charta,' and the Church of the United Kingdom") (report and recommendation adopted Jan. 5, 2000); *see also Williams v. St. Vincent Hosp.*, 258 F. App'x 293, 294 (11th Cir. 2007) (per

---

[15] The undersigned finds Plaintiff's other allegations as to the FBI's purported meddling in Plaintiff's state criminal case to be just as fanciful and delusional. (*See* Doc. 7 at 418-22.)  Further, to the extent Plaintiff alleges "constitutional claims against the United States or its agencies or employees, this court lacks jurisdiction to consider the claim[s]."  *Albajon*, 72 F. Supp. 2d at 1367.  As stated in *Albajon*, "[c]onstitutional torts are not within the scope of the Federal Tort Claims Act because Congress has not waived sovereign immunity with respect to constitutional violations."  *Id.* (citing *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982) (stating the United States has not waived its sovereign immunity from liability for an award of damages arising from purported violations of constitutional rights by its agents)).

curiam) (affirming dismissal of the complaint as frivolous, because it presented "a 'far-fetched' scenario based on assertions of a massive conspiracy to monitor [plaintiff] that is 'clearly baseless'").  In the absence of non-frivolous allegations involving the United States or its employees, it appears that there is no federal jurisdiction under the FTCA.  *See* 28 U.S.C. § 2680(h); *see also Miller*, 541 F.3d at 1100 (stating that "wildly implausible allegations in the complaint should not be taken to be true").

In addition, to the extent Plaintiff attempts to state a claim for a violation of 18 U.S.C. § 241, § 242, and/or § 2332, he has no standing to invoke these sections, because they are criminal statutes that do not expressly create a private right of action.  *See Williams*, 258 F. App'x at 295; *Collier v. Jackson*, Case No. 3:09-cv-935-J-34MCR, *3 (M.D. Fla. Oct. 1, 2009) (report and recommendation adopted Jan. 21, 2010).  Moreover, § 2332 sets forth the penalties for crimes occurring *outside* the United States, and Plaintiff does not allege that any of the events at issue in the Amended Complaint took place outside the United States.

Based on the foregoing, it is respectfully **RECOMMENDED** that the Application (**Doc. 6**) be **DENIED** and this case be **DISMISSED without prejudice** to Plaintiff filing a paid complaint.

24

**DONE AND ENTERED** at Jacksonville, Florida, on December 14, 2018.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

*Pro Se* Plaintiff